## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

DENNIS VOTTA, CARRIE VOTTA, )
On behalf of themselves and all others so )
similarly situated, )
)
     *Plaintiffs,* )     C.A. NO.
)
  vs. )     CLASS ACTION COMPLAINT
)
)     JURY TRIAL DEMANDED
BAYVIEW LOAN SERVICING, LLC, )
FEDERAL HOME LOAN MORTGAGE )
CORPORATION, FEDERAL HOUSING )
FINANCE AGENCY, )
)
     *Defendants.* )

## INTRODUCTION

1.     The Representative Plaintiffs Dennis Votta and Carrie Votta, on behalf of themselves and all others so similarly situated, bring this action as described in the paragraphs set forth herein. This class action is brought against Defendants: Federal Home Loan Mortgage Corporation (Freddie Mac); Freddie Mac's conservator and regulator, the Federal Housing Finance Agency (FHFA); and Bayview Loan Servicing, LLC (Bayview), acting as an agent of Freddie Mac and FHFA, for wrongful foreclosure of the subject property due to Defendants failure to provide homeowners adequate notice and opportunity for meaningful hearings, as required by the Due Process clause of the Fifth Amendment to the Constitution of the United States, breach of contract, and breach of extreme duty of good faith. Therefore, accelerations, foreclosures and mortgagee's sales of the Representative Plaintiffs and others similarly situated mortgages and properties (respectively) are void.

2.      The Representative Plaintiffs, on behalf of themselves and all others so similarly situated, seek declaratory relief, injunctive relief, actual, monetary, punitive and exemplary damages, restitution, an accounting, attorney's fees and costs, and all other relief as provided by law for Defendants wrongful acts.

3.      In addition to the class action allegations described in this Complaint, Representative Plaintiffs also bring individual claims for breach of contract, specific performance and seek a declaratory judgment that Defendants breached an agreement it made directly with Plaintiffs to permanently modify their mortgage after Plaintiffs completed a three-month trial payment plan. Plaintiffs pray that this Honorable Court declare that any foreclosure was caused by Defendants' Breach of Contract and is therefore invalid, void, and without force and effect.  Plaintiffs further request this Honorable Court enjoin the Defendants from further conveyance of their subject properties and/or taking any eviction actions against Plaintiffs as Defendants' right of possession is not superior to Plaintiffs, having been conveyed the property subsequent to a void conveyance.

## JURISDICTION AND VENUE

4.      This Honorable Court has subject matter jurisdiction over this action and all Defendants pursuant to 28 U.S.C. § 1331, as this case arises under the Constitution and laws of the United States of America.

5.      Further, this Court has jurisdiction over this action pursuant to 12 U.S.C § 1452 (f)(2) because this case is brought against the Federal Home Loan Mortgage Corporation.

6.      The events giving rise to the claims stated herein occurred in the District of Rhode Island and this venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391.

7.      Venue is proper in this Honorable Court in that this Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. Rule 57.

8.     Pursuant to Fed. R. Civ. P. Rule 23(a)(1), this complaint is a putative class action in which the class is so numerous that joinder of all members is impracticable.

9.     Pursuant to Fed. R. Civ. P. Rule 23(b)(1), there are questions of law and fact common to the class.

10.    Pursuant to Fed. R. Civ. P. Rule 23(a)(3), the claims or defenses of the Representative Plaintiffs are typical of the claims or defenses of the class.

11.    Pursuant to Fed. R. Civ. P. Rule 23(a)(4), the Representative Plaintiffs will fairly and adequately protect the interests of the class.

12.    Pursuant to Fed. R. Civ. P. Rule 23(b)(1)(A)&(B), prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; and (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications and may substantially impair or impede their ability to protect their interests.

13.    Pursuant to Fed. R. Civ. P. Rule 23(b)(2), the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

14.    Pursuant to Fed. R. Civ. P. Rule 23(b)(3), the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**PARTIES**

15.     Representative Plaintiffs, Dennis Votta and Carrie Votta, on behalf of themselves and all those so similarly situated, are citizens of Rhode Island, reside at and are the rightful owners of 25 Hamilton Drive, East Greenwich, RI 02818 which is the "subject property" referenced herein.

16.     Defendant, Federal Housing Finance Agency (FHFA), is an independent agency of the United States Federal Government established pursuant to 12 U.S.C. S 4511 *et seq*. FHFA is located at 400 7th St SW, Washington, DC 20024.

17.     Defendant, Federal Home Loan Mortgage Corporation (Freddie Mac), is a corporation organized under the laws of the United States by special charter, to serve the important governmental objectives of providing stability in the secondary mortgage market, responding appropriately to the private capital market, providing ongoing assistance to the secondary market for residential mortgages, and promoting access to mortgage credit throughout the nation by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing. (See: 12 U.S.C. 1451). Freddie Mac is located at 801 Pennsylvania Avenue, NW #335, Washington, DC 20004.

18.     Defendant, Bayview Loan Servicing, LLC (Bayview), is a mortgage servicer and banking related services company located at 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, FL 33146.

19.     At all times referenced herein, the Defendants acted in concert with one another, had knowledge of and were aware of the actions of each other as noted herein.

## GENERAL FACTUAL ALLEGATIONS

### The Conservatorship of FHFA over Freddie Mac

20.    With the U.S. Congress' establishment of the Housing and Economic Recovery Act of 2008 (HERA), the federal government established FHFA as a federal agency to supervise and regulate Freddie Mac and affiliated entities, the Federal National Mortgage Association ("Fannie Mae") and affiliated entities, and any Federal Home Loan Bank. (See: 12 U.S.C. §§ 4502 (20), 4511(b)(2)).

21.    The Director of FHFA is empowered to place Freddie Mac into conservatorship under FHFA and the power of FHFA to operate and control all of Freddie Mac's operations as its conservator.

22.    The Director of FHFA placed Freddie Mac under the conservatorship of FHFA on or about September 7, 2008.

23.    In January 2010, the Congressional Budget Office (CBO) concluded that the actions taken by FHFA to place Freddie Mac under conservatorship effectively made Freddie Mac a government entity, based on the federal government's control and ownership of Freddie Mac.[1]

24.    In 2013, the CBO concluded, "the federal government is now the effective owner of [Freddie Mac], any gain or loss arising from a change in the way the distressed mortgages are handled by [Freddie Mac] would ultimately accrue to taxpayers."[2]

---

[1] Congressional Budget Office Background Paper, 2010, Id. at page 1 "In the judgment of the Congressional Budget Office (CBO), those actions make Fannie Mae and Freddie Mac part of the government and imply that their operations should be reflected in the federal budget". Under the CBO's accounting, "the mortgages owned or guaranteed by Fannie Mae and Freddie Mac were treated as loans and guarantees of the federal government."

[2] Options for Principal Forgiveness in Mortgages Involving Fannie Mae and Freddie Mac Congressional Budget Office, Mitchell Remy & Damien Moore, Working Paper No. 2013-02.

25.    Since September 2008, FHFA has control and continues to control all rights, titles, powers and privileges of the shareholders and board of directors of Freddie Mac.[3] Because FHFA as conservator has succeeded to the rights of all shareholders, only FHFA is allowed to elect the directors of Freddie Mac, not shareholders.

26.    FHFA determines the size of Freddie Mac's Board of Directors and the scope of its authority. Since the inception of the conservatorship and as recently as February 12, 2016, FHFA has elected all of the directors and the Chief Executive Officer of Freddie Mac.  FHFA delegated certain authority to the Board of Directors, while retaining certain significant authorities for itself. FHFA also controls amendment to or withdrawal of the delegation of authority at any time.

27.    FHFA determines the strategic direction of Freddie Mac, defines its business objectives, and mandates activities, regardless of whether or not the objectives and activities FHFA mandates are costly to implement, have adversely affected Freddie Mac's financial status, and/or reduces Freddie Mac's profitability. Freddie Mac's management decisions "are subject to review and/or approval by FHFA and management frequently receives direction from FHFA on various matters involving day-to-day operations."

28.    Freddie Mac's directors serve on behalf of, and exercise their authority as directed by, FHFA.  As a result of the conservatorship, Freddie Mac is being managed to serve a public mission, which may negatively impact Freddie Mac's business and profitability. Under FHFA conservatorship, Freddie Mac is not managed to maximize shareholder returns.

29.    FHFA, as both conservator and regulator, and the United States Treasury, pursuant to a senior preferred stock purchase agreement, prohibit Freddie Mac from paying any dividends to common shareholders.

---

[3] Federal Home Loan Mortgage Corporation, Annual Report, Form 10-K, for the fiscal year ended December 31, 2015, Id. at pages 157-158, 177, 216.

30.    FHFA's own September 7, 2008 explanation of the conservatorship states that there is "no exact time frame that can be given as to when this conservatorship may end." FHFA's conservatorship of Freddie Mac will end, according to said explanation, when the Director of FHFA issues an order terminating the conservatorship, after the Director determines that FHFA's "plan to restore the Company to a safe and solvent condition has been completed successfully."[4]

31.    As a result of FHFA's conservatorship of Freddie Mac, since September 6, 2008, and continuing for the foreseeable future, FHFA directly controls and operates Freddie Mac with all the powers of the shareholders, directors, and officers of Freddie Mac, owns title to all the assets of Freddie Mac, and has broad powers over all business of Freddie Mac.

32.    HERA does contain any provision automatically terminating FHFA' s conservatorship of Freddie Mac, namely if FHFA's director appoints FHFA as receiver of Freddie Mac. (See: 12 U.S.C § 4617(a)(4)(D)). However, FHFA's control over Freddie Mac will not be terminated upon its being appointed as receiver. There is no other law, regulation, policy or directive that provides either a date or specifies conditions by which FHFA's control over Freddie Mac will terminate.

33.    Termination of the conservatorship by means other than the appointment of FHFA as receiver of Freddie Mac, Freddie Mac will remain subject to the control of the United States Treasury through the senior preferred stock purchase agreement, senior preferred stock, and warrant to purchase common stock.

34.    On or about September 7, 2008, as restated on or about September 26, 2008, Freddie Mac entered into a senior preferred stock purchase agreement, as amended, with the United States Treasury. Pursuant to the senior preferred stock purchase agreement, Freddie Mac transferred to the United States Treasury 1,000,000 shares of preferred stock, senior in right for both dividends

---

[4] FHFA, Questions and Answers on Conservatorship, (Sept. 7, 2008), available at http://www.treasury.gov/press-center/pressreleases/Documents/fhfa consrv faq 090708hpl 128.pdf. (Also See: Exhibit 4, Id. at page 217).

and liquidation to all other preferred or common stock of Freddie Mac, with an initial liquidation preference of $ 1,000.00 per share; a warrant to purchase 79.9% of the common stock of Freddie Mac at a nominal price; and certain restrictions on Freddie Mac's ability to issue new shares, declare dividends, or dispose of assets without the approval of the United States Treasury; in exchange for the commitment of the United States Treasury to extend up to $100 billion (later amended to $200 billion) to maintain the liquidity of Freddie Mac.[5]

35.    Since the inception of the conservatorship in 2008 through the first quarter of 2012, Freddie Mac received a total of $71.3 billion from Treasury under the senior preferred stock purchase agreement to maintain a zero-net worth. Because the senior preferred stock had an initial liquidation preference of $1 billion, the current aggregate liquidation preference in favor of the United States Treasury for the senior preferred stock is $72.3 billion.

36.    The United States Treasury owns 100% of the senior preferred stock of Freddie Mac and holds warrants to purchase 79.9% of the common stock of Freddie Mac at a nominal price on a fully diluted basis on the date of exercise.

37.    Pursuant to the senior preferred stock purchase agreement, as amended, the United States Treasury is entitled to receive quarterly dividends equal to the entire net worth of Freddie Mac, which results in every dollar of future profits being paid to the United States Treasury. Similarly, Freddie Mac is not permitted to retain earnings, rebuild a capital position, or pay dividends or other distributions to stockholders other than the United States Treasury. Dividends are payable only at the direction of the Conservator FHFA and with consent of the Treasury.

38.    Through the first quarter of 2016, Freddie Mac paid a total of $98.2 billion in dividends to Treasury on the senior preferred stock. However, under the terms of the senior preferred stock

---

[5] Amended and Restated Senior Preferred Stock Purchase Agreement, dated September 26, 2008,

purchase agreement, dividend payments do not offset prior Treasury draws, and, therefore, the Treasury's ownership interest in Freddie Mac is not reduced by reason of the dividends.

39.    Pursuant to the senior preferred stock purchase agreement, Freddie Mac is not permitted to redeem the senior preferred stock prior to the termination of the United States Treasury's funding commitment, which commitment will not terminate unless Freddie Mac is liquidated, Freddie Mac's liabilities are satisfied, or the Treasury has provided the maximum amount of funding available under its commitment to Freddie Mac.

40.    The CBO considers the payments from Freddie Mac to the United States Treasury as "intragovernmental payments, which do not affect net federal outlays."

41.    As Freddie Mac was chartered by Congress to further governmental objectives related to the secondary mortgage market and national housing policies, and as the federal government maintains a substantial ownership interest in Freddie Mac, and as Freddie Mac is substantially funded by the federal government, its Board of Directors of Freddie Mac are entirely appointed by FHFA, and because Freddie Mac is under the control of FHFA and/or the United States Treasury, Freddie Mac is an agency or instrumentality of the United States for the purpose of individual rights guaranteed against the federal government by the United States Constitution.  (See: <u>DOT v. Ass'n of Am. R.R.</u> 135 S. Ct. 1225, 1232-1233 (U.S. 2015); <u>Lebron v. National Railroad Passenger Corp.</u>. 513 U.S. 374 (1995)).

**The Agency Relationship between FHFA and Freddie Mac and Third-Party Servicers**.

42.    In its ordinary course of business, Freddie Mac purchases mortgages that meet its underwriting standards from originators such as banks or thrifts. Freddie Mac holds these mortgages in its retained portfolios or packages them into mortgage-backed securities that it sells

to investors. (See: FHFA Office of Inspector General Evaluation Report, FHFA' s Oversight of the Servicing Alignment Initiative, February 12, 2014).

43.     For the mortgages that Freddie Mac purchases, Freddie Mac enters into contracts with mortgage servicers, which includes a "Servicing Guide" and other agreements. Under the terms of these agreements, the servicer collects mortgage payments, sets aside taxes and insurance premiums in escrow, forwards interest and principal payments to the contractually designated party, and responds to payment defaults.

44.     The "Servicing Guide" and other agreements establishes certain requirements for servicers of Freddie Mac mortgages to follow when they perform their servicing functions and duties, which include specific instructions on mitigating losses after borrowers' default and conducting foreclosures on behalf of Freddie Mac.

45.     After FHFA placed Freddie Mac into conservatorship, FHFA has engaged in continuous supervision of Freddie Mac's oversight of its servicers. (FHFA Office of Inspector General, FHFA's Supervision of Freddie Mac's Controls over Mortgage Servicing Contractors, March 7, 2012).[6]

**The Foreclosure Policies of FHFA and Freddie Mac are Unconstitutional**

46.     FHFA created the Servicer Alignment Initiative in April 2011, which has since been amended by four additional initiatives beginning in January 2012 (collectively, "SAI"), by which FHFA directs the actions taken by Freddie Mac's mortgage servicers when servicing a delinquent mortgage loan, in order to maximize the financial benefits to Freddie Mac, and ultimately to the taxpayers.

---

[6] FHFA's Office of Inspector General describes "continuous supervision" as "a wide range of ongoing activities designed to monitor and analyze [Freddie Mac's] overall business profile, including any trends or associated emerging risks."

47.    Through the SAI, FHFA directed Freddie Mac to update its servicing guidelines by adding new standards and timelines by which servicers were to manage delinquent mortgages.

48.    In the SAI, FHFA created a policy that requires servicers of Freddie Mac owned mortgages to follow specific state-level timelines for the processing of foreclosures from the date of referral to the attorney/trustee through the date of the foreclosure sale.

49.    In the SAI, FHFA has directed Freddie Mac's servicers to use non-judicial foreclosure procedures when foreclosing on residential properties in Rhode Island, including the Properties of the Representative Plaintiffs and others so similarly situated. The foreclosure policy in the SAI requires servicers of Freddie Mac loans to foreclose on properties without a pre-deprivation hearing in violation of the Due Process Clause of the Fifth Amendment.

50.    FHFA's foreclosure policy in the SAI violates the Due Process Clause of the Fifth Amendment in that it requires servicers of Freddie Mac loans to deprive homeowners like the Representative Plaintiffs and others so similarly situated, of their primary residences through the use of non-judicial foreclosure proceedings, which do not provide for a hearing prior to the deprivation of a homeowners' property interest.

51.    As such, Bayview, Freddie Mac, and FHFA jointly violated the Fifth Amendment procedural due process rights of the Representative Plaintiffs and others so similarly situated, by conducting non-judicial foreclosures and sales pursuant to R.I.G.L. § 34-27, *et seq.* without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

## **ALLEGATIONS OF THE REPRESENTATIVE PLAINTIFFS**

52.    The Representative Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

53.    The Representative Plaintiffs bring this action on behalf of themselves and all others so similarly situated.

54.    On June 30, 2008, the Representative Plaintiffs were conveyed the subject property. The Deed granting the property was recorded in the Town of East Greenwich Clerk's Office Land Evidence Records in Book 955, at page 619 on July 2, 2008.

55.    On May 18, 2010, the Representative Plaintiffs refinanced their existing mortgage and executed a promissory note and mortgage deed in the sum of Three Hundred Forty-Seven Thousand Six Hundred Seventy-Six and---47/100 Dollars ($347,676.47) in favor of JPMorgan Chase Bank, N.A. ("Votta Mortgage/Note"). The Votta Mortgage was recorded in the Town of East Greenwich Clerk's Office Land Evidence Records in Book 1043, at page 278.

56.    The Representative Plaintiffs allege that the Votta Note was given to Freddie Mac subsequent to the May 10, 2018 closing date of their refinance of their then existing mortgage with JPMorgan Chase Bank, N.A. and that Freddie Mac has been the Holder of the Votta Note at all times related to the allegations as plead herein.

57.    On August 23, 2014, JPMorgan Chase Bank, N.A. assigned the subject mortgage to Bayview Loan Servicing, LLC. Said assignment was recorded in the Town of East Greenwich Clerk's Office Land Evidence Records in Book 1262 at Page 79.

58.    On or about August 23, 2014, Bayview became the third-party loan servicer of the Votta Mortgage for Noteholder Freddie Mac.

59.    The Representative Plaintiffs allege that the August 23, 2014 assignment of the Votta Mortgage was made in error and that JPMorgan Chase Bank, N.A. meant to assign the mortgage to Freddie Mac and transfer only third party servicing rights only to Bayview.

60.    In support of the aforenoted allegations, on September 10, 2014, JPMorgan Chase Bank, N.A. assigned the subject mortgage to Federal Home Loan Mortgage Corporation (Freddie Mac). Said assignment was recorded in the Town of East Greenwich Clerk's Office Land Evidence Records in Book 1263 Page 295 on October 1, 2014.

61.    The Representative Plaintiffs defaulted on their obligations pursuant to the Votta Mortgage.

62.    Plaintiffs applied for a loan modification with Defendant Bayview on or about June of 2018. After applying for modification, Plaintiffs were determined initially eligible by Defendants and were sent a Trial Period Plan (TPP) Agreement on or about July 23, 2018. Plaintiffs accepted, the TPP Agreement to Bayview in a timely manner on or before August 6, 2018. (Exhibit A)

63.    Plaintiffs TPP Agreement described a trial period that was to run from September of 2018 through November of 2018 at which time a final modification would be offered to Plaintiffs in writing prior to the next month (December 2018). Plaintiffs made each of the payments described in the TPP Agreement in the agreed amount of $2743.74, as well as additional payments beyond the trial period were made in a timely manner by Plaintiffs and were accepted by Bayview.

64.    Since the TPP period began, and at all times relevant, Plaintiffs responded to all document requests made by Bayview by timely supplying the requested documents. Plaintiffs supplied information to Bayview that was truthful to the best of their knowledge throughout the process.

65.    On or about December 12, 2018, Bayview sent Plaintiffs a purported finalized modification agreement. (Exhibit B). The purported finalized modification agreement, however, incorrectly stated that Plaintiffs were "not the occupant of the Property". Plaintiffs allege that the statement that the Plaintiffs are not occupants of the Property was a material error in the final contract that would affect their rights as occupants and ability to claim the property as their "homestead" for

tax purposes.  Furthermore, it was not a true statement and they could not sign the document under oath.

66.    Plaintiffs immediately attempted to contact Bayview and left numerous messages pleading with Bayview to call them back in order to correct the error described in Paragraph 64 of this Complaint.  Bayview failed to contact the Plaintiff for several months.

67.    Defendant failed to perform under the contract they formed with Plaintiff and instead breached said contract by not providing Plaintiff with a final permanent modification of the Votta Mortgage after Plaintiffs made all payments under the Trial Period as agreed, complied with all terms of the TPP and accepted the final modification in accordance with Bayview's instructions

68.    On January 30, 2020 Bayview, acting as third party loan servicer on behalf of Noteholder Freddie Mac, caused a mortgagee's foreclosure sale to be conducted wherein the Votta Mortgage was foreclosed and the subject property was sold at mortgagee's foreclosure sale.

69.    The Representative Plaintiffs further allege Defendants Bayview, Freddie Mac, and FHFA jointly violated their Fifth Amendment procedural due process rights by conducting a non-judicial foreclosure sale pursuant to Rhode Island General Laws 34-27 *et seq*. without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

70.    The Defendants have deprived the Representative Plaintiffs, and others so similarly situated, of property without Due Process, breached mortgage contracts, and breached the covenant of extreme good faith by wrongfully exercising the power of sale.

71.    Therefore, the foreclosure of the Votta Mortgage and the mortgages of others so similarly situated, and mortgagee's foreclosure sales of the subject property and the properties of others so similarly situated, are wrongful, void, and without force and effect.

## CLASS ALLEGATIONS

72.     The Representative Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

73.     The Representative Plaintiffs bring this Action on behalf of themselves and all others so similarly situated.

74.     The Representative Plaintiffs sue on behalf of themselves and all homeowners or former homeowners wherein the Defendants have deprived mortgagors of property without Due Process.

75.     The gravity of harm to the Representative Plaintiffs and members of the class resulting from the Defendants wrongdoing outweighs any conceivable reasons, justifications and/or motives of said Defendants for engaging in such unfair acts and practices.

76.     Defendants conduct was unfair, oppressive, and contrary to public policy and the generally recognized standards applicable to the consumer lending business.

77.     The Representative Plaintiffs and members of the class suffered quantifiable damages such as loss of equity in their homes, money spent on funding bankruptcy, legal defense of foreclosure and eviction, and moving and relocation expenses.

78.     The Representative Plaintiffs and members of the class have suffered general damages such as loss of property interests, negative impact to credit ratings, loss of their homes, lost opportunities to rectify their situations through loss mitigation and mediation of their mortgage delinquencies, and extreme mental and emotional distress.

79.     The Representative Plaintiffs and members of the class seek actual, exemplary, punitive, and monetary damages.

80.     The Representative Plaintiffs claim on behalf of themselves and all others so similarly situated that the Defendants deprivation of the Representative Plaintiffs, and others so similarly

situated properties, without Due Process, in breach of mortgage contracts, and in breach of the covenant of extreme good faith by wrongfully exercising the power of sale, are the direct causes of the harms alleged herein.

81.     Excluded from the class are governmental entities, the Defendants, their affiliates and subsidiaries, the Defendants current employees and current or former officers, directors, agents, representatives, their family members, the members of this Court and its staff.

82.     The Representative Plaintiffs do not know the exact size or identities of the members of the class, since such information is in the exclusive control of Defendants. The Representative Plaintiffs believe that the class encompasses hundreds of individuals whose identities can be readily ascertained from Defendants books and records.  Therefore, the class is so numerous that joinder of all members is impracticable. (i.e. Numerosity).

83.     The Representative Plaintiffs and all members of the class have been subject to and affected by the same conduct.

84.     The questions of law and fact are common to the class and predominate over any questions affecting only individual members of the class. (i.e. Commonality).

85.     The claims of the Representative Plaintiffs are typical of the claims of the class and do not conflict with the interests of any other members of the class in that the Representative Plaintiffs and the other members of the class were subject to the same conduct. (i.e. Typicality).

86.     The Representative Plaintiffs will fairly and adequately represent the interests of the class as a whole.  The Representative Plaintiffs are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, wrongful foreclosure actions. (i.e. Adequacy).

87.     A Class Action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

88.     The Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

89.     The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

90.     It is not in the best interest of members of the class to individually control the prosecution or defense of separate actions.

91.     The specific extent and nature of any litigation concerning the controversy already commenced by or against members of the class is minimal.

92.     It is desirable to concentrate the litigation of the claims in this particular forum and there are little to no difficulties likely to be encountered in the management of a classification.

**COUNT I**
**DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS**

93.     The Representative Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

94.     The Representative Plaintiffs bring this Action on behalf of themselves and all others so similarly situated.

95.     Pursuant to the foreclosure policy in the SAI, Bayview, Freddie Mac, and FHFA are acting jointly to deprive the Representative Plaintiffs and others of their ownership rights in properties by conducting foreclosure sales pursuant to R.I.G.L. § 34-27, *et seq.* which authorizes mortgagees

to foreclose the rights of an equitable title holder without judicial process or the opportunity to be heard before foreclosure and sale.

96.     When used by federal government actors, such as Freddie Mac and FHFA, the procedures of R.I.G.L. § 34-27, *et seq.* do not satisfy the Due Process Clause of the Fifth Amendment before depriving an owner of his/her property. Specifically, R.I.G.L. § 34-27, *et seq.* does not provide for adequate notice, an opportunity to be heard before the deprivation of property, or opportunity to recover appropriate damages for improper deprivation of property.

97.     Pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution, Freddie Mac and FHFA, as agencies and/or instrumentalities of the federal government, owed a higher degree of notice and hearing to the Representative Plaintiffs and others, than is provided by Rhode Island General Laws before depriving the Representative Plaintiffs and others of their properties.

98.     The Representative Plaintiffs and others have significant property interests at stake. Foreclosures and sales of the mortgages and properties (respectively) of the Representative Plaintiffs and others, permanently deprives the Representative Plaintiffs and others of their ownership, possession, and use of said properties, which are used as primary residences; clouds titles to the properties; impairs ability to sell, rent, or otherwise alienate properties; taints credit ratings; reduces chances of the Representative Plaintiffs and others in obtaining future loans or mortgages; subjects the Representative Plaintiffs and others to eviction; and jeopardizes the Representative Plaintiffs and others security in dwelling places.

99.     There is significant risk of erroneous deprivation of the Representative Plaintiffs and others interests through procedures used by Freddie Mac, and FHFA pursuant to R.I.G.L. § 34-27, *et seq.*

100.    To prevent erroneous deprivation of property, the Due Process Clause of the Fifth Amendment to the United States Constitution requires agencies and/or instrumentalities of the federal government, such as Freddie Mac and FHFA, to provide the Representative Plaintiffs and others an opportunity to be heard at a meaningful time on, inter alia, any challenge to the true ownership of the Note; any challenge to Freddie Mac' s and/or FHFA's authority to foreclose on behalf of the owner of the Note; any challenge to Freddie Mac' s and/or FHFA' s determination of default under the Note and Freddie Mac's and/or FHFA's calculation of deficiency; any challenge to Freddie Mac's and/or FHFA's determination that the Representative Plaintiffs and others are not eligible for a loan modification, a repayment, or other homeowner assistance option; the opportunity to refinance or reinstate through other sources of funding; whether Freddie Mac and/or FHFA acted in good faith; and any challenge to Freddie Mac' s and/or FHFA' s compliance with applicable notice procedures.

101.    The government's financial interest in obtaining ownership, possession, and use of the properties of the Representative Plaintiffs and others is minimal.

102.    There are no exigent circumstances that would justify the lack of a pre-deprivation hearing, nor would a meaningful hearing before a neutral party impose significant fiscal or administrative burdens.

103.    FHFA's foreclosure policy in the SAI violates the Due Process Clause of the Fifth Amendment in that it requires servicers of Freddie Mac loans to deprive homeowners like the Representative Plaintiffs and others so similarly situated, of their primary residences through the use of non-judicial foreclosure proceedings, which do not provide for a hearing prior to the deprivation of the homeowners' property interest.

104.    Bayview, Freddie Mac, and FHFA jointly violated the Fifth Amendment procedural due process rights of the Representative Plaintiffs and others so similarly situated, by conducting non-judicial foreclosures and sales pursuant to R.I.G.L. § 34-27, *et seq*. without first providing adequate notice, a meaningful hearing prior to the deprivation of property, and an opportunity to recover adequate damages.

105.    As a direct and proximate result of Bayview's, Freddie Mac's, and FHFA's violation of the Representative Plaintiffs and others so similarly situated due process rights, the Representative Plaintiffs and others so similarly situated have suffered damages including harm to their credit; costs and expenses of foreclosures and sales added to their accounts; a losses of equity in properties; expenses due to postage, mailing, and long distance telephone calls; an impairment of their ability to sell, rent, or otherwise alienate their properties; and having their security in dwelling places jeopardized.

106.    The Representative Plaintiffs and others are entitled to a declaratory judgment determining that the acceleration of all sums due under the notes, the foreclosures, and mortgagee's foreclosure sales of the subject property, and the properties of those so similarly situated, are in violation of the Fifth Amendment procedural due process rights of the Representative Plaintiffs and others so similarly situated and are therefore void.

107.    The Representative Plaintiffs and others are entitled to an injunction preventing the transfer of the right, title, and interest in their properties.

108.    The Representative Plaintiffs and others are entitled to cancellation costs and fees assessed to them for wrongful foreclosure, together with additional damages.

109.    The Representative Plaintiffs and others are entitled to be returned to their status and circumstances prior to the wrongful foreclosure and sale, including, but not limited to, the

rescission of foreclosures and the quieting of titles of the Representative Plaintiffs and others so similarly situated.

110.    The Representative Plaintiffs and others are entitled to actual, monetary, punitive and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by law.

## COUNT II
## BREACH OF CONTRACT

111.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

112.    As described above, the Defendants, through their third-party servicer Bayview, offer to permanently modify the Votta Mortgage in return for Plaintiffs making three (3) monthly payments of $2743.74 and complying with the terms of the TPP to the Defendants constituted a valid offer.

113.    By making said monthly payments, on time and as agreed, as well as being in compliance with all terms of the TPP, Plaintiffs accepted Defendants' offer.

114.    Alternatively, Plaintiffs' agreement to make said monthly payments constitutes an offer. Acceptance of this offer occurred when Defendants accepted Plaintiffs' payments.

115.    The agreement was supported by consideration.  First, Plaintiffs' payments to Defendants constituted consideration.  By making those payments – in an amount and manner different from their previous payments – Plaintiffs gave up the ability to pursue other means of saving their home. These actions constitute both a detriment to the Plaintiffs and a benefit to Defendants.

116.    Plaintiffs and Defendants thereby formed a valid contract.

117.    To the extent that the contract was subject to a condition subsequent by providing Defendants an opportunity to request and/or review documentation from Plaintiffs, this condition was waived by Defendants in that they failed to timely raise it and/or they are estopped to assert it as a defense to Plaintiffs' claims.

118.    Plaintiffs applied for a loan modification with Defendant Bayview on or about June of 2018.  After applying for modification, Plaintiffs were determined initially eligible by Defendants and were sent a Trial Period Plan (TPP) Agreement on or about July 23, 2018.  Plaintiffs accepted, the TPP Agreement to Bayview in a timely manner on or before August 6, 2018. (Exhibit A)

119.    Plaintiffs TPP Agreement described a trial period that was to run from September of 2018 through November of 2018 at which time a final modification would be offered to Plaintiffs in writing prior to the next month (December 2018).  Plaintiffs made each of the payments described in the TPP Agreement in the agreed amount of $2743.74, as well as additional payments beyond the trial period were made in a timely manner by Plaintiffs and were accepted by Bayview.

120.    Since the TPP period began, and at all times relevant, Plaintiffs responded to all document requests made by Bayview by timely supplying the requested documents.  Plaintiffs supplied information to Bayview that was truthful to the best of their knowledge throughout the process.

121.    On or about December 12, 2018, Bayview sent Plaintiffs a purported finalized modification agreement.  (Exhibit B).  The purported finalized modification agreement, however, incorrectly stated that Plaintiffs were "not the occupant of the Property".  Plaintiffs allege that the statement that the Plaintiffs are not occupants of the Property was a material error in the final contract that would affect their rights as occupants and ability to claim the property as their "homestead" for tax purposes.  Furthermore, it was not a true statement and they could not sign the document under oath.

122.    Plaintiffs immediately attempted to contact Bayview and left numerous messages pleading with Bayview to call them back in order to correct the error described in Paragraph 64 of this Complaint.  Bayview failed to contact the Plaintiff for several months.

123.    Defendants failed to perform under the contract they formed with Plaintiff and instead breached said contract by not providing Plaintiffs with a final permanent modification of the Votta Mortgage after Plaintiffs made all payments under the Trial Period as agreed, complied with all terms of the TPP and accepted the final modification in accordance with Bayview's instructions.

124.    By denying Plaintiffs' timely permanent modification, Defendants breached the contract.

125.    Plaintiffs remain ready, willing and able to perform under the contract.

126.    Plaintiff has suffered harm and is threatened with additional harm from Defendant's breach, including but not limited to foreclosure, longer loan payoff time, higher principle balance, improper negative reporting to credit bureaus; inappropriate fees and charges assessed, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest. Plaintiff's injury is measured by the difference between his current circumstances and the modification he was entitled to.

127.    By making Trial Period payments both during and after the Trial Period, Plaintiffs forewent other remedies that he might have pursued to save his home, such as restructuring their debt under the bankruptcy code, or pursuing other strategies to deal with his default, such as selling his home. Plaintiff also has suffered additional harm in the form of foreclosure activity against his home.

128.    Defendant is obligated by contract and common law to act in good faith and to deal fairly with the Plaintiff so as to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance. *See e.g.*, *Ide Farm & Stable, Inc. v. Cardi,* 110 R.I. 735, 739 (1972).

129.    As a result of these failures to act in good faith and the absence of fair dealing, Defendant caused Plaintiff harm, as alleged above.  Defendant's bad faith was thus to Plaintiff's detriment.

130.   WHEREFORE, the Plaintiffs respectfully request the following relief:

    a.   Enter a judgment declaring the acts and practices of Defendants complained of herein to constitute a breach of contract and a breach of the covenant of good faith and fair dealing, as well as a declaration that Defendants are required to offer permanent modification to Plaintiffs on the terms promised in the temporary modification, together with an award of monetary damages and other available relief on those claims;

    b.   Enter a judgment declaring Plaintiffs the true owners of the property and any foreclosure deed to or from Defendants as invalid and void.

    c.   Grant a permanent or final injunction enjoining Defendants and their agents and employees, affiliates and subsidiaries, from continuing to harm Plaintiffs, including, but not limited to, a stay of foreclosure or reversal of foreclosure;

    d.   Order specific performance of Defendants' contractual obligations together with other relief required by contract and law;

    e.   Award actual, exemplary and/or statutory minimum damages;

    f.   Award restitution and prejudgment interest;

    g.   Award punitive damages;

    h.   Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees;

    i.   Grant Plaintiff such other and further relief as this Court finds necessary and proper.

Dated: February 3, 2020

                                     Respectfully Submitted,
                                      Plaintiffs, by their Attorney,
                                      Todd S. Dion Esq.,

/s/ Todd S. Dion
Todd S. Dion Esq. (6852)
681 Park Avenue, Ste 24
Cranston, RI 02910
401-965-4131 Phone
401-270-2202 Fax
toddsdion@msn.com

## VERIFICATION

I, Dennis Votta, under the pains and penalties of perjury, that the above allegations are true and correct to the best of my knowledge.

02/03/20

Dennis Votta

I, Carrie Votta, under the pains and penalties of perjury, that the above allegations are true and correct to the best of my knowledge.

02/3/20

Carrie Votta